[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12084

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LONNIE DONTAE MITCHELL,

Defendant- Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:20-cr-00224-RAH-JTA-1

_____

Before JORDAN, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Lonnie Dontae Mitchell appeals his conviction for possessing a firearm as a convicted felon based on three arguments. First, Mitchell argues that the district court erred by denying his motion to suppress evidence when it determined, although the executed search warrant lacked probable cause, officers met the good faith exception in *United States v. Leon*, 468 U.S. 897 (1984). Second, Mitchell argues that the district court erred by allowing evidence that was either irrelevant or inadmissible character evidence. Third, he contends that the district court erred in denying his request for an "unconscious bias" jury instruction. On all three grounds, we disagree and affirm.

## I.

In early 2020, Agent Richard Holston with the Alabama State Bureau of Investigation began investigating Lonnie Mitchell, a convicted felon prohibited from possessing a firearm. Holston and other agents met with two witnesses that described Mitchell operating a sex-for-money operation, distributing drugs, and possessing firearms at a residence on Yarbrough Street. Both witnesses lived at the Yarbrough residence and described the layout of the house. Undercover agents confirmed the sex-for-money activities at the Yarbrough residence through an online platform and discovered that one person on the website knew Mitchell.

On September 12 and 13, 2020, agents conducted a sting operation and detained a woman involved in the sex-for-money acts. At the time she was taken into custody, this third witness told officers she was on a Facetime call with Mitchell in case the meeting was with law enforcement. This third witness lived at the Yarbrough residence and corroborated the first two witnesses' information about Mitchell's involvement with drugs, sex-for-money operations, and firearms, all of which she observed within the previous twenty-four hours.

*Search Warrant*

On this information, Agent Holston provided a brief affidavit of facts, and a judge issued a search warrant for the Yarbrough residence. Agent Holston's affidavit established that: (1) one individual who lived at the Yarbrough residence described engaging in sex-for-money acts at Mitchell's instruction and described drugs and firearms present; (2) a second individual described engaging in sex-for-money acts at Mitchell's instruction; and (3) a third individual who lived at the residence described drugs and firearms present at the residence within the previous twenty-four hours. Agent Holston later explained he left out more detailed identifying information to protect the witnesses' safety based on reports they feared Mitchell and Mitchell was prone to physical violence.

On September 16, 2020, police entered the Yarbrough residence, arrested Mitchell, and seized a Glock pistol within a couple of feet of Mitchell. Police also seized various illegal drugs, identifying documents, money, and jewelry. The jewelry—a ring and

bracelet—matched the jewelry worn on a video from Mitchell's Facebook with a different firearm in the background.

Mitchell was charged with one count of possession of a firearm as a convicted felon, a violation of 18 U.S.C. § 922(g)(1). Mitchell moved to suppress all evidence seized from the Yarbrough residence, arguing that Agent Holston's affidavit lacked probable cause to support the search. A magistrate judge recommended granting the motion to suppress, reasoning that Agent Holston's affidavit lacked probable cause so much so that no reasonable officer could rely on it. The government objected, and the district court reversed course, denying Mitchell's motion to suppress evidence related to the search at the Yarbrough residence. The district court concluded that, although the affidavit did not provide a substantial basis to find probable cause, the officers' reliance on the warrant met the "good faith" exception. Evidence obtained from the search warrant was introduced at trial.

*Motion to Exclude*

Before trial, Mitchell moved to exclude various evidence, such as evidence related to drugs at the Yarbrough residence, Mitchell's proximity to other firearms, evidence concerning other people, or the abandoned house next to the Yarbrough residence. Mitchell argued the evidence was irrelevant, prejudicial, or impermissible character evidence. The district court granted in part and denied in part that motion.

At trial, some evidence was admitted related to drugs found at the Yarbrough residence and Mitchell's proximity to a different gun through Facebook pictures. Evidence was also admitted about the Glock pistol at issue: texts between Mitchell and a woman named Tressa Jones-Arnold showed Jones-Arnold bought the gun at a pawn shop for him. And evidence showed the gun case for the Glock pistol was found in an abandoned house next door, along with two other empty gun cases.

*Jury Instruction*

Mitchell requested an "unconscious bias" jury instruction, advising the jury to "decide the case solely on the evidence admitted in this courtroom and the law before you" instead of "unconscious bias." The court refused Mitchell's requested instruction but advised the jury that it must not be influenced by "prejudice or bias against the government or defendant."

The jury convicted Mitchell for possessing a firearm as a convicted felon. The court entered its judgment on June 9, 2021, and sentenced Mitchell to 108 months' confinement. This appeal followed.

## II.

Mitchell argues that the district court made three errors. First, Mitchell argues the court should have suppressed evidence derived from the Yarbrough residence search. Second, he argues the court erred by allowing evidence he considers irrelevant or impermissible character evidence. Third, Mitchell contends the court

failed to give an unconscious bias jury instruction. The government responds that the officers acted in good faith reliance on the Yarbrough residence search warrant such that evidence derived from the search was admissible. The government also contends the district court's admission of evidence fully complied with the rules of evidence and refusing to give an "unconscious bias" jury charge was not an abuse of discretion. We address each argument in turn.

*A.*

First, Mitchell appeals the district court's denial of his motion to suppress physical evidence and statements based on the execution of a search warrant at the Yarbrough residence. The district court found that although the affidavit supporting the search warrant lacked probable cause, the seized evidence and custodial statements were admissible because the *Leon* good faith exception to the exclusionary rule applies.

We review a district court's denial of a motion to suppress evidence as a mixed question of law and fact. *United States v. Blake*, 868 F.3d 960, 973 (11th Cir. 2017). We review *de novo* whether the *Leon* good faith exception applies, but we review "the underlying facts upon which that determination is based" for clear error. *United States v. Morales*, 987 F.3d 966, 974 (11th Cir. 2021) (quoting *United States v. Robinson*, 336 F.3d 1293, 1295 (11th Cir. 2003)), *cert. denied*, 142 S. Ct. 500 (2021).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. A search warrant, then, must be supported by probable cause and describe with particularity the place to be searched and items to be seized. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004). Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment (e.g., obtained based on a search warrant unsupported by probable cause) is generally inadmissible during a subsequent criminal prosecution. *See United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002).

Even so, the exclusionary rule's "extreme sanction" is limited, *Herring v. United States*, 555 U.S. 135, 139–40 (2009) (quoting *Leon*, 468 at 916), and there is always a "high obstacle for those urging [its] application," *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 364–65. In *United States v. Leon*, the Supreme Court announced the "good faith" exception to the exclusionary rule, which permits evidence when officers reasonably rely in good faith on an invalid search warrant. 468 U.S. at 922. Under this framework, "searches conducted pursuant to warrants will rarely require suppression," although *Leon* "list[s] four situations in which suppression would still be appropriate." *United States v. Taxacher*, 902 F.2d 867, 871 (11th Cir. 1990). The situation Mitchell raises here is whether Agent Holbert's affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See Leon*, 468 U.S. at 923 (internal quotation omitted).

To answer whether an affidavit underlying a search is "so lacking in indicia of probable cause," we must confine our analysis to the four corners of the affidavit. *See United States v. Robinson*, 336 F.3d 1293, 1296–97 (11th Cir. 2003). At a minimum, an affidavit should "'state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched' and should 'establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity.'" *Morales*, 987 F.3d at 975 (quoting *Martin*, 297 F.3d at 1313−14). The affidavit's information must be "fresh." *Martin*, 297 F.3d at 1314. And "[i]f an informant is mentioned in the affidavit, the affidavit must also demonstrate the informant's veracity and basis of knowledge." *Id.* (quotation marks omitted). "However, when there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *Id.* (quotation marks and brackets omitted).

Here, the affidavit supporting the warrant contains enough indicia of probable cause that an officer's reliance was not unreasonable. The affidavit sufficiently linked the Yarborough residence to firearms, sex-for-money acts, and drugs through three informants. *See Morales*, 987 F.3d at 975. The affidavit also links Mitchell to the illegal activity at the Yarbrough residence, for example, through testimony that he directed the sex-for-money acts. *See id.* The information was "fresh" because one informant described firearms and drugs at the residence in the last twenty-four hours. *See*

*Martin*, 297 F.3d at 1314. Although the affidavit is sparse concerning the veracity or identifying information for each informant, the three informants' overlapping information corroborated one another such that establishing their veracity is unnecessary. *See id.* at 1315.

Determining that the warrant is not facially lacking in indicia of probable cause, we turn to whether the *Leon* good faith exception applies. In other words, would a reasonably well-trained officer have known that the search was illegal despite the judge's authorization? *Leon*, 468 U.S. at 922. For this question, we *may* look beyond the four corners of the affidavit. *Martin*, 297 F.3d at 1309. The *Leon* good faith exception requires suppression "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause," *Leon*, 468 U.S. at 926, based on a "totality of the circumstances," *Taxacher*, 902 F.2d at 872.

The circumstances just before executing the search more than bolster an objectively reasonable belief in the existence of probable cause. *See Leon*, 468 U.S. at 926. At least two witnesses described Mitchell instructing them to engage in sex-for-money acts in exchange for drugs and described the presence of firearms when they lived at the Yarbrough house. A sting operation conducted only three days before the warrant was executed located a third witness who linked Mitchell to drugs, firearms, and a sex-for-money operation at the residence in the last twenty-four hours. Any lack of detail the affidavit suffers was not because Agent

Holston was "dishonest or reckless," *see id.*, but because he sought to protect the witnesses who feared Mitchell.

In sum, the *Leon* good faith exception applies in this case. We therefore affirm the district court's decision to deny Mitchell's motion to suppress.

## B.

Second, Mitchell appeals the district court's denial of his motion to exclude evidence and motion *in limine*. We review the district court's evidentiary decisions for abuse of discretion. *United States v. Cunningham*, 194 F.3d 1186, 1195 (11th Cir. 1999). If the defendant fails to object at trial to the admission of evidence, "we review[] the district court's ruling for plain error only." *United States v. Deverso*, 518 F.3d 1250, 1254 (11th Cir. 2008).

Mitchell has a laundry list of evidence he considers irrelevant or prejudicial (challenging government Exhibits 2, 19–20, 23–26, 30–39, 41–50). But of the twenty-seven exhibits Mitchell challenges, twelve were never admitted at trial: Exhibits 2, 19, 20, 26, 34, 37, 38, 41, 43, 48, 49, and 50. Six of those were exhibits the government specifically agreed before trial not to submit: Exhibits 19, 20, 26, 48, 49, and 50. Mitchell also references a "jail call" that was never offered at trial. We highly disfavor raising arguments so "utterly devoid of merit" like these. *Parker v. Am. Traffic Sols., Inc.*, 835 F.3d 1363, 1371 (11th Cir. 2016) (internal quotation omitted).

Five more exhibits that Mitchell now challenges, he did not object to at trial: Exhibits 24, 25, 36[1], 42, and 44. Consequently, Mitchell must demonstrate plain error warranting relief. *See Deverso*, 518 F.3d at 1254.

All five exhibits are either photos of the Yarbrough house or a photo of an empty flatscreen tv box at the abandoned house next to the Yarbrough residence. The Yarbrough house is where Mitchell was arrested, and the Glock pistol was seized. Officers found gun cases at the abandoned house next door and an empty flatscreen TV box that matched the TV in the Yarbrough house. It follows that the government introduced the picture of the TV box to suggest that items at the abandoned house belonged to Mitchell. The photos are relevant to Mitchell's illegal firearm possession or knowledge of such possession. *See* Fed. R. Evid. 401. Thus, the exhibits were not admitted via error, let alone plain error, warranting a new trial. *Deverso*, 518 F.3d at 1256.

That leaves ten exhibits admitted at trial that Mitchell objected to: Exhibits 23, 30, 31, 32, 33, 35, 39, 45, 46, and 47.

Exhibit 35 is a picture from a Facebook video of a black male's hand with distinctive jewelry and a firearm in the

---

[1] A government's Exhibit 36, described as a Facebook video of a hand with firearms in the background, was never offered into evidence at trial. A different government's Exhibit 36, described as a picture of the Yarbrough residence, was not objected to. We therefore analyze the Exhibit 36 admitted at trial for plain error.

background. Exhibits 30–33 and 45–47 were pictures of Mitchell from his Facebook page wearing similar jewelry as the hand in Exhibit 35. In other words, the pictures tend to show it was Mitchell's hand in Exhibit 35 with a different firearm present.

We have explained that a defendant's "possession of a concealed firearm on a prior instance is relevant to a charge of possession of a firearm." *United States v. Gomez*, 927 F.2d 1530, 1534 (11th Cir. 1991). A defendant's prior interactions with firearms may demonstrate that the charged firearm possession was not "for an innocent purpose" or a "mere accident or coincidence." *Id.* Evidence of Mitchell's past possession of a firearm was offered for this very purpose. And in fact, the district court provided a limiting instruction to explain that the presence of a different firearm was admitted to show "absence of mistake" and "knowledge" with respect to possessing the Glock pistol at issue. Fed. R. Evid. 404(b)(2).

Similarly, Exhibit 23 was a picture of two empty gun cases found in an abandoned house near the Yarbrough residence. Mitchell objected based on relevance. Other evidence at trial (like the empty TV box at the abandoned house matching the TV at the Yarbrough residence) suggested Mitchell used the abandoned house to store his possessions. And a third gun case at the abandoned house matched the Glock pistol found near Mitchell. Accordingly, the gun cases for other firearms at the abandoned house tend to show Mitchell knowingly possessed the Glock pistol. *Gomez*, 927 F.2d at 1534. Again, evidence of Mitchell's possession of other firearms is relevant for this purpose. *Id.*

Exhibit 39 was a pawn shop's form signed by the purchaser, Tressa Jones-Arnold, for the Glock pistol found near Mitchell. Mitchell contends the form is irrelevant because it concerns "other people." But text messages between Jones-Arnold and Mitchell demonstrated that Jones-Arnold purchased the gun for Mitchell. Accordingly, Jones-Arnold's purchase of the Glock pistol seized is highly relevant to Mitchell's knowing possession of a firearm. The district court did not abuse its discretion by allowing any of the exhibits Mitchell objected to.

Finally, Mitchell challenges any evidence or mention of drugs at trial as impermissible character evidence. For example, the government introduced pictures of drugs present at the Yarbrough house. Mitchell did not object to admission of the pictures at trial. And we have explained that drugs are "relevant evidence from which to infer that [the defendant] knowingly possessed rifles found in . . . that home." *United States v. Thomas*, 242 F.3d 1028, 1032 (11th Cir. 2001). As in *Thomas*, the presence of drugs "was admitted to prove knowing possession of the firearm[], not character." *Id.* at 1033.

Thus, the district court did not err in denying Mitchell's motion to exclude and motion *in limine*.

## C.

Third, Mitchell claims the district court erred by refusing to provide a jury instruction on "unconscious bias." Although the district court instructed the jury not to be influenced by "prejudice or

bias against the government or defendant," Mitchell contends the district court erred by denying a more expansive instruction warning against "unconscious bias." Mitchell defines "unconscious bias" as "stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention."

"We review the failure to give a requested jury instruction for abuse of discretion." *United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012). A district court abuses its discretion where "the requested instruction (1) was correct, (2) was not substantially covered by a charge actually given, and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *Id.* (internal quotation omitted). Mitchell cannot overcome the latter two requirements. The charge the district court gave substantially covered the proposed instruction, and the failure to give the instruction did not substantially impair Mitchell's ability to present an effective defense. *See id.* Therefore, the district court did not abuse its discretion by refusing to give Mitchell's requested instruction.

## III.

Mitchell's conviction and sentence are **AFFIRMED**.