[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 23-11847

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SIDNEY RASHARD COLLINS,

Defendant- Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:22-cr-00106-TFM-N-1

————————————

Before JILL PRYOR, NEWSOM, and KIDD, Circuit Judges.

PER CURIAM:

Appellant Sidney Collins possessed a pistol that had been modified to function as a machine gun, meaning it could deploy multiple shots with a single function of the trigger. Under federal law, it is unlawful for a person to possess this type of weapon without submitting a registration to the National Firearms Registration and Transfer Record. Collins failed to register his machine gun and was charged with violating 26 U.S.C. § 5861(d). He pleaded guilty, and the district court imposed a 72-month sentence.

For the first time on appeal, Collins argues that § 5861(d) is unconstitutional as applied to him under the Second Amendment. He also challenges his sentence, which involved a substantial upward variance, as substantively unreasonable. After careful consideration, we affirm.

## I.

Collins tried to enter a nightclub in downtown Mobile, Alabama. The nightclub required anyone entering to be searched by its bouncers. When the bouncers tried to search Collins, a struggle ensued, and he ran away. Mobile police officers, who were patrolling in the area, witnessed the incident and tried to approach Collins. But he fled from them and ignored their orders to stop. During the pursuit, Collins pulled a firearm from his waistband and threw it into the street. The officers caught Collins and took him into custody.

The officers recovered the firearm Collins had discarded. It was a Glock pistol that had been modified with a machine gun conversion device, known as a Glock Chip or Glock Switch. This device allowed a shooter to depress the trigger a single time and have the weapon shoot multiple times automatically. Law enforcement officers later tested the weapon and confirmed that it functioned as a machine gun because it could fire more than one shot with a single function of the trigger and without manual reloading. Collins was aware of the weapon's modification.

Federal law regulates the possession of this type of weapon. Any weapon that can shoot "automatically more than one shot, without manual reloading, by a single function of the trigger" qualifies as a machine gun. 26 U.S.C. § 5845(b). Any machine gun in the United States must be registered with the federal government's National Firearms Registration and Transfer Record. *Id.* §§ 5841(a), 5845(a). It is a crime for a person to "possess" a machine gun that "is not registered to him in the National Firearms Registration and Transfer Record." *Id.* § 5861(d). A person who violates this law faces a maximum penalty of 10 years' imprisonment. *Id.* § 5871.

The government charged Collins with possession of an unregistered machine gun, in violation of 26 U.S.C. § 5681(d). After his arrest, the district court placed Collins on home detention pending trial. About 10 days later, the Mobile Police Department arrested Collins on unrelated charges arising out of an incident that occurred a few months earlier in which Collins allegedly shot and

killed a minor. The government then moved in this case to detain Collins pending trial, and a magistrate judge granted that motion.

In this case, Collins pleaded guilty to the charge of possessing an unregistered machine gun pursuant to a written plea agreement. As part of the plea agreement, he generally waived his right to "challenge his . . . conviction . . . in any district court or appellate court proceedings." Doc. 35 at 7.[1]

The plea agreement also addressed sentencing. The government agreed to recommend that Collins receive a sentence within the applicable guidelines range. But the plea agreement cautioned that the court would determine the sentence to be imposed, and it could "var[y]" from the applicable guidelines range. *Id.* at 4. If the district court imposed a sentence with an upward variance, Collins could challenge his sentence on appeal.

Before sentencing, a probation officer prepared a presentence investigation report ("PSR"). The PSR reported that Collins had a total offense level of 17 and a criminal history category of I, which yielded a guidelines range of 24 to 30 months' imprisonment.

The PSR reported that Collins had no previous criminal convictions. But it did note that he had pending state charges arising out of the shooting of a minor. The PSR reported that for his role in the shooting, Collins was facing charges in state court for murder, discharging a gun into an unoccupied building or vehicle, and

---

[1] "Doc." numbers refer to the district court's docket entries.

discharging a gun into an occupied building or vehicle. The PSR noted that the state court had held a preliminary hearing, but it contained no other information about the status of that case.

At an initial sentencing hearing, the district court adopted the PSR's guidelines calculations. It then asked the government for additional information about the pending state charges against Collins for the minor's murder. The government's attorney answered that she had recently been assigned Collins's case and did not have any information about the separate state charges. The court postponed the sentencing and directed the government to be prepared at the next hearing to present information about the state charges and Collins's role in the minor's murder.

Three weeks later, the court convened a second sentencing hearing. At that hearing, the government's attorney stated that she was not ready to proceed because she had failed to gather information about the state charges. Collins's attorney then informed the court that the state case had not yet been presented to a grand jury and she did not know when it would be presented. Consequently, the court postponed the sentencing a second time.

One month later, the court held a third sentencing hearing. At this hearing, the government called as a witness the Mobile police officer who investigated the minor's murder. She reported that the 14-year-old sustained multiple gunshot wounds to his head, upper torso, neck, right arm, right thigh, and left leg.

In her investigation, the officer spoke to Ryan Kidd, who admitted to driving Collins, Deonte Kimbrough, Kevin Estell, and

Terry Raine to the location where the minor was shot. Kidd reported that one of the passengers told him to stop the vehicle and then all four passengers, including Collins, exited the vehicle and fired their weapons. After the shooting, Collins threatened to kill Kidd if he said anything about the shooting.

As part of the investigation, the officer interviewed Collins. He admitted that on the night of the shooting he was with Kimbrough and others and was carrying a gun. The interview ended when Collins asked for a lawyer.

The court asked the officer about the status of the state criminal case against Collins. She answered that the case had been bound over to a grand jury but could not recall whether she had testified before the grand jury. The officer was the government's only witness at the sentencing hearing.

Collins called two witnesses at the sentencing hearing: his grandmother and his football coach. They both testified about Collins's background and character. Collins's grandmother testified that he grew up going to church and playing football. She described how he helped his great-grandmother and elderly neighbors by checking their blood sugar and mowing their lawns. She also told the court that Collins had a large, supportive family. The football coach testified that he had known Collins since Collins was eight years old. He described Collins as a hard worker and noted that Collins had served as captain of the football team.

Collins also addressed the court. He apologized to the court and to his mother for his actions and asked for a second chance. He

told the court that he had made a bad choice and had learned from his mistakes.

Collins's attorney then asked the court for a sentence at the low end of the applicable guidelines range. The government requested a sentence within the guidelines range.

After hearing from the parties and considering the sentencing factors set forth at 18 U.S.C. § 3553(a),[2] the court imposed a sentence of 72 months. Although neither party had requested a variance, the court determined that a substantial upward variance from the guidelines range of 24 to 30 months' imprisonment was warranted given the seriousness of the offense and the need for deterrence and punishment.

The court discussed in detail its reasons for imposing this sentence. It focused on Collins's attempt to bring a machine gun into a nightclub, which created a dangerous risk to others. The court also discussed other aspects of Collins's dangerous conduct,

---

[2] Under § 3553(a), a district court is required to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of the statute. 18 U.S.C. § 3553(a). These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. *Id.* § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)–(7).

including that he struggled with the bouncers who tried to pat him down, fled from police, and then threw down the weapon. The court found that when Collins threw aside the weapon, he created a danger to the public because it could have discharged and injured someone.

The court discussed whether it had considered Collins's role in the minor's murder. First, it stated that it had not considered Collins's role and that it was "setting aside" whatever involvement Collins had. Doc. 71-2 at 34. But shortly after making this statement, the court mentioned that Collins was "involved . . . to some extent" in the incident "that led to the death of a 14-year-old kid." *Id.* After Collins objected, the court clarified that it had not considered his role in the death.

After the court announced the sentence, Collins objected to the upward variance. The court overruled the objection. This is Collins's appeal.

## II.

Collins raises two issues on appeal. First, he challenges his conviction, arguing that the statutory prohibition on the possession of an unregistered machine gun, as applied to him, violates the Second Amendment. He also challenges the substantive reasonableness of his sentence. We start with Collins's constitutional challenge to his conviction and then address the sentencing issue.

## A.

On appeal, Collins challenges the constitutionality of 26 U.S.C. § 5861(d), which prohibits individuals from possessing certain types of firearms, including machine guns, if they have not registered with the federal government. He argues that the statute as applied to him runs afoul of the Second Amendment.

We generally review *de novo* the constitutionality of a statute. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010). But because Collins raises his Second Amendment challenge for the first time on appeal, we review for plain error only. *Id.* To prevail under this standard, he must show that "(1) there was an error, (2) the error was plain or obvious, (3) the error affected [his] substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Anderson*, 1 F.4th 1244, 1268–69 (11th Cir. 2021).

Collins's challenge to his conviction fails because he cannot demonstrate plain error.[3] "It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically

---

[3] The government argues that we should reject Collins's challenge to his conviction on the alternative ground that it is barred by the appeal waiver in his plea agreement. In the plea agreement, Collins expressly waived his right to challenge his "conviction . . . in any district court or appellate court proceedings." Doc. 35 at 7. Based on this provision, the government says that Collins bargained away his right to raise a constitutional challenge to his conviction on appeal. We do not address the merits of this argument because, even assuming Collins retained the right to challenge the constitutionality of § 5861(d) on appeal, his constitutional challenge fails under plain error review.

resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Morales*, 987 F.3d 966, 976 (11th Cir. 2021) (citation modified).

Collins has not pointed to any decision from the Supreme Court or this Court holding that 26 U.S.C. § 5861(d) is unconstitutional under the Second Amendment. Because there is no precedent from the Supreme Court or this Court directly addressing the constitutionality of the statute, Collins has not established plain error. Accordingly, we affirm his conviction.

## B.

We now turn to Collins's challenge to the substantive reasonableness of his sentence.[4] When reviewing the substantive reasonableness of a sentence, we consider the totality of the circumstances under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). We will vacate a sentence only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (citation modified).

---

[4] This challenge is not barred by the appeal waiver provision in the plea agreement because the provision preserved Collins's right to appeal his sentence if it included an upward variance.

When the district court imposes a sentence with an upward variance, it "must have a justification compelling enough to support the degree of the variance and complete enough to allow [for] meaningful appellate review." *United States v. Early*, 686 F.3d 1219, 1221 (11th Cir. 2012). Though a major variance should be supported by a more significant justification than a minor variance, the district court need not account for every § 3553(a) factor, nor must it discuss each factor or its role at sentencing. *Gall*, 552 U.S. at 50. Moreover, "a sentence imposed below the statutory maximum penalty is an indicator of a reasonable sentence." *United States v. Grushko*, 50 F.4th 1, 20 (11th Cir. 2022). The appellant bears the burden of establishing that the sentence is unreasonable based on the facts of the case and the § 3553(a) factors. *United States v. Al Jaberi*, 97 F.4th 1310, 1322 (11th Cir. 2024).

On appeal, Collins argues that his 72-month sentence, which involved a substantial upward variance, was unreasonable. But after carefully reviewing the record, we cannot say that the district court abused its discretion. Here, Collins's criminal conduct was particularly serious and posed a danger to the public. He possessed a firearm that had been modified to function as a machine gun and failed to register it with the federal government. He then tried to bring this weapon into a nightclub. When the nightclub's bouncers tried to pat him down, he struggled with them and ran away. When police officers intervened and commanded Collins to stop, he ignored their commands, fled, and threw the machine gun to the ground. Even if Collins did not actually harm himself or anyone else during the incident, his actions created a serious risk of harm

to others. Under these circumstances, we are not left with a definite and firm doubt that the district court committed a clear error in imposing the upward variance.

In challenging his sentence, Collins points out that he had no previous criminal convictions and argues that the district court should have given greater weight to his lack of criminal history.[5] He is arguing, in effect, that the district court should have weighed the § 3553(a) factors differently and given greater weight to the ones that favored him. But "the weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court." *United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016). We also note that his sentence is well below the applicable statutory maximum of 10 years, which further indicates that the sentence is reasonable. *See Grushko*, 50 F.4th at 20. Accordingly, we affirm Collins's 72-month sentence as substantively reasonable.

**AFFIRMED.**

---

[5] Collins acknowledges that at the time of sentencing he had pending state charges arising out of the minor's death. But he concedes that the district court did not consider his involvement in the minor's death when imposing a sentence. We, too, do not consider Collins's involvement in the death when reviewing the reasonableness of the sentence.