**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Dennis L. TAXACHER,**
**Defendant–Appellant.**

**No. 88–8596.**

United States Court of Appeals,
Eleventh Circuit.

June 4, 1990.

James K. Jenkins, Atlanta, Ga., for defendant-appellant.

Arthur W. Leach, Asst. U.S. Atty., Savannah, Ga., for plaintiff-appellee.

Before VANCE * and ANDERSON, Circuit Judges, and LYNNE,** Senior District Judge.

ANDERSON, Circuit Judge:

Dennis L. Taxacher pled guilty to one count of violating the Travel Act, 18 U.S.C. § 1952. He received a 41–month sentence. On appeal, Taxacher claims that the district court improperly denied his motions to suppress. In addition, he argues that the sentencing court erred by refusing to reduce his base offense level under the Federal Sentencing Guidelines ("Guidelines"). We find both of these claims without merit, and, accordingly, affirm.

## I. BACKGROUND

On November 7, 1987, Taxacher was stopped for speeding while driving south on U.S. Interstate 95 in McIntosh County, Georgia. After stopping Taxacher, Georgia State Patrol Trooper Barry A. Riner requested that he step out of the automobile and produce his driver's license and vehicle registration. Taxacher produced a Pennsylvania driver's license and a rental agreement for the automobile. Riner noticed that, under the terms of the rental agreement, the automobile should have been returned three weeks earlier on October 17, 1987. Taxacher said that he had received an extension on the car and showed Riner a receipt for a deposit of $500.00 made on November 2, 1987. The receipt did not state the purpose of the deposit or whether the rental agreement had been extended.

His suspicion aroused, Riner began asking Taxacher questions about the origin, destination, and purpose of his travel. Taxacher grew increasingly nervous during the questioning. He initially stated that he was travelling to Fort Pierce, Florida to visit his parents. Upon further questioning, Taxacher explained that he had flown from Pennsylvania to Fort Lauderdale,

Florida, where he rented the automobile. After renting the car, Taxacher drove to his parents' home in Fort Pierce to visit with them. Taxacher said that he then drove back to Pennsylvania to winterize his parents' home. Taxacher also stated that at the time of his arrest, he was driving back to Fort Lauderdale to return the rental automobile before flying back to Pennsylvania.

Riner believed that Taxacher's answers were inconsistent and asked him for permission to search the automobile. Although Taxacher orally agreed to the search, he refused to sign a written consent-to-search form. After consenting to the search, Taxacher attempted to lead Riner to the passenger compartment of the automobile. Riner looked through the passenger area of the vehicle, then asked Taxacher to open the trunk. Taxacher complied with the request, but did not allow Riner complete access to the contents of the trunk. Instead, Taxacher stood between Riner and the trunk in such a manner that Riner could view but not actually touch the contents. Riner observed a hang-up clothes bag, satchel, and two plastic bags in the trunk. When Riner asked him what the satchel contained, Taxacher "really and truly looked like he was going to faint." R. 2:19. After Riner asked if he could examine the contents of the satchel and reached toward it, Taxacher slammed the trunk and told him that no further search would be made without a search warrant. Riner then directed Taxacher to follow him to the McIntosh County Sheriff's Office to post a cash bond for the speeding violation.

En route to the sheriff's office, Riner contacted the office and requested that a magistrate be made available so that he could apply for a search warrant. Just before arriving at the sheriff's office, Riner was informed that Taxacher's Virginia driver's license had been suspended and not reinstated. Taxacher was detained for the

* Judge Robert S. Vance was a member of the panel which heard oral argument but due to his death on December 16, 1989, did not participate in this decision. This case is decided by a quorum. *See* 28 U.S.C. § 46(d).

** Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

speeding violation and driving with a suspended license.

Riner, who had not before filled out an application for a search warrant, telephoned the local district attorney for advice. Riner then completed a search warrant application. In his affidavit accompanying the warrant application, Riner stated that (1) the defendant appeared overly nervous; (2) the rental agreement indicated that the car was past due; (3) the defendant gave inconsistent stories about his travel plans; and (4) the defendant initially consented to a search of the vehicle, then withdrew consent when the trooper asked to look into a specific satchel. Riner did not mention either the receipt for the deposit of $500 or Taxacher's statement that he had extended the rental agreement.[1]

Based on Riner's affidavit, the magistrate for McIntosh County issued a search warrant authorizing the search of "all contents and baggage" in the vehicle driven by Taxacher. The contraband to be searched for was listed as "marijuana, cocaine, and any other items which are illegal to possess under the Ga. Controlled Substances Act. And, any money that may be used or may have been used in connection with drugs."

Riner searched Taxacher's car and the contents therein, discovering $186,626.00 in cash in the satchel. Riner then notified Georgia Bureau of Investigation Agent James A. Evans of this finding. After arriving at the sheriff's office, Evans searched the automobile before seizing it, and then placed Taxacher under arrest for violation of the Travel Act. Later that day, after he had been informed of his *Miranda* rights, Taxacher signed a waiver of these rights and voluntarily agreed to make a statement. During the interrogation by Evans that followed, Taxacher made incriminating statements. Taxacher was charged with one count of money laundering and two counts of violating the Travel Act.

Taxacher subsequently filed motions to suppress both the evidence discovered during the search of his car and the statements he made after the search. The district court found the warrant invalid because Riner did not have sufficient probable cause to search and detain Taxacher's vehicle. The court found that the magistrate had issued the search warrant in reliance on the four factors set forth by Riner in his affidavit, none of which, alone, constituted sufficient probable cause. However, despite the warrant's invalidity, the court denied the motions to suppress the illegally obtained evidence, holding that the good faith exception to the exclusionary rule applied. Taxacher then pled guilty to one count of violating the Travel Act, reserving his right to appeal the denial of the motions. *See* Fed.R.Crim.P. 11(a)(2).

At the sentencing hearing, the government recommended that Taxacher's sentencing offense level be reduced by four points because he was a "minimal participant." The probation department recommended a reduction of two levels because Taxacher was a "minor participant." Despite these recommendations, the sentencing court found that the appellant was not entitled to a reduction and required him to submit further evidence of his role as a "minimal" or "minor" participant. Taxacher chose not to put on additional evidence. The sentencing court refused to reduce the offense level and sentenced Taxacher to 41 months.

## II. GOOD FAITH

The government does not contest the district court's ruling that there was insufficient probable cause to justify the search of Taxacher's car. Thus, we must assume that the search warrant was issued and executed in violation of the Fourth Amendment. The issue before us now is whether the district court correctly applied the good faith exception to the exclusionary rule, rendering the improperly obtained evidence admissible. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We affirm.

---

**1.** The rented automobile was not past due, as Taxacher had in fact secured an extension of the rental agreement. Riner did not attempt to verify Taxacher's explanation until after the search warrant had been obtained.

In *Leon,* the Supreme Court recognized a good faith exception to the exclusionary rule for searches conducted pursuant to warrants. Observing that the purpose of the exclusionary rule is to deter unlawful police conduct, the Court found that this purpose would not be served, and the rule should not be applied, when officers engage in "objectively reasonable law enforcement activity." 468 U.S. at 918–19, 104 S.Ct. at 3418. In particular, the Court held that the suppression of evidence would have no deterrent effect "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* at 920, 104 S.Ct. at 3419 (footnote omitted).[2]

Although it stated that searches conducted pursuant to warrants will rarely require suppression, the *Leon* Court did list four situations in which suppression would still be appropriate. *Id.* at 923, 104 S.Ct. at 3421. These situations are (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," (2) "where the issuing magistrate wholly abandoned his judicial role," (3) where the "warrant [is] based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" and (4) where "a warrant [is] so facially deficient ... that the executing officers cannot reasonably presume it to be valid." *Id.* (citations omitted).

■ Appellant argues that the first and third limitations listed above preclude the application of the good faith exception in this case. The first limitation is negated by the district court's finding that Riner acted neither recklessly nor dishonestly in submitting his affidavit. This finding is subject to review on appeal under the clearly erroneous standard. *United States v.*

*Cancela,* 812 F.2d 1340, 1343 (11th Cir. 1987). Our review of the record persuades us that there is ample evidence to support the district court's finding. The finding is not clearly erroneous.

■ Appellant also asserts that the search warrant was "so lacking in indicia of probable cause" that Riner's reliance on it was "entirely unreasonable." The ultimate issue of objective good faith is a legal question which we review *de novo. United States v. Accardo,* 749 F.2d 1477, 1481 (11th Cir.1985).[3]

■ In deciding whether or not the warrant was "so lacking," appellant would have us apply a standard that focuses on whether the affidavit presented evidence sufficient to create disagreement among thoughtful and competent judges. Under this test, an officer's reliance on a warrant would be objectively reasonable only if the affidavit presents enough evidence to create disagreement among reasonable jurists as to the existence of probable cause. A Ninth Circuit panel employed this test in *United States v. Hove,* 848 F.2d 137, 139 (9th Cir.1988) (citing *Leon,* 468 U.S. at 926, 104 S.Ct. at 2422).

We reject appellant's proposed test. Our reading of *Leon* persuades us that the proper test is whether the *officer* acted in objective good faith under all the circumstances. The focus in *Leon* is on the officer. "[T]he officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable...." *Leon,* 468 U.S. at 922, 104 S.Ct. at 3420. The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances ... may be considered." *Id.* at 922 n. 23, 104 S.Ct. at 3420 n. 23.

2. The *Leon* Court also stated that "the marginal or nonexistent benefits produced by suppression evidence obtained on objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." 468 U.S. at 922, 104 S.Ct. at 3420.

3. The underlying facts on which the legal question is based would be reviewed under the clearly erroneous standard. *Accardo,* 749 F.2d at 1481. In this case, however, there is no dispute as to the underlying facts.

*See also Illinois v. Krull,* 480 U.S. 340, 355, 107 S.Ct. 1160, 1170, 94 L.Ed.2d 364 (1987) ("Nor can a law enforcement officer be said to have acted in good-faith reliance upon a statute if its provisions are such that a reasonable officer should have known that the statute was unconstitutional."); *United States v. Cardall,* 773 F.2d 1128, 1133 (10th Cir.1985) ("the knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers").

It is true that in *Leon* the Court observed that reasonable jurists had disagreed about whether there was probable cause on the facts of that case. 468 U.S. at 926, 104 S.Ct. at 3422. This observation, however, was merely intended to bolster the Court's holding that the officer had acted reasonably under the circumstances; *Leon* did not establish a "reasonable jurist" test as the threshold.[4] If a reasonable jurist could believe in objective good faith that there was probable cause, obviously a reasonably well-trained officer could believe likewise. However, because a reasonable jurist has more legal training than a reasonably well-trained officer, what would be reasonable for a well-trained officer is not necessarily the same as what would be reasonable for a jurist. *See Malley v. Briggs,* 475 U.S. 335, 346 n. 9, 106 S.Ct. 1092, 1098 n. 9, 89 L.Ed.2d 271 (1986).[5]

Thus, we subscribe to a standard which is focused on a reasonably well-trained offi-cer and is based upon the totality of the circumstances. Our standard comports with the language used in *Leon,* 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23 ("whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization") ("all of the circumstances ... may be considered"), and is also consistent with the purposes underlying the exclusionary rule and the good faith exception, *id.* at 916, 919, 104 S.Ct. at 3417, 3418 ("the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates") (the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity").

Applying this standard, we agree with the district court's legal conclusion; we conclude that Riner acted in objective good faith, and that the warrant was not so lacking in indicia of probable cause as to render official belief in the existence of probable cause entirely unreasonable. In this case Officer Riner consulted with the local district attorney before seeking the search warrant, and then submitted the matter to a neutral magistrate. These steps are indicative of objective good faith. *See Massachusetts v. Sheppard,* 468 U.S. 981, 989, 104 S.Ct. 3424, 3428, 82 L.Ed.2d 737 (1984). Officer Riner was suspicious because of the inconsistent and implausible explanations given by appellant regarding his itinerary. He was suspicious as a re-

---

**4.** Other courts have also used the "reasonable jurist" standard, but not as a threshold test. *See United States v. Martin,* 833 F.2d 752, 756 (8th Cir.1987), *cert. denied,* — U.S. ——, 110 S.Ct. 1793, 108 L.Ed.2d 794 (1990); *United States v. Tate,* 795 F.2d 1487, 1490–91 & n. 5 (9th Cir. 1986); *United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985); *United States v. Sager,* 743 F.2d 1261, 1266 (8th Cir.1984).

**5.** In *Malley,* the Supreme Court applied the *Leon* standard of objective reasonableness in determining the degree of qualified immunity accorded a defendant police officer in a damages action under 42 U.S.C. § 1983. 475 U.S. at 344–45, 106 S.Ct. at 1097–98. In applying that standard, the Court implicitly recognized the difference between a reasonable jurist and a reasonable officer.

It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable. But it is different if no *officer* of reasonable competence would have requested the warrant, i.e., his request is outside the range of the professional competence expected of an *officer.* If the magistrate issues the warrant in such a case, his action is not just a reasonable mistake, but an unacceptable error indicating gross incompetence or neglect of duty. The officer then cannot excuse his own default by pointing to the greater incompetence of the magistrate.

475 U.S. at 346 n. 9, 106 S.Ct. at 1098 n. 9 (emphasis added).

sult of appellant's excessive nervousness. That nervousness increased dramatically when the officer focused attention on the satchel and asked appellant what the satchel contained and if Riner could examine the contents of the satchel. Officer Riner's suspicions were aroused by the fact that appellant nearly closed the trunk of the vehicle on the officer's head, and by the unusual circumstance that appellant, who had previously given his oral consent to search, precipitously revoked that consent and slammed the trunk down when the officer focused attention on the satchel and asked permission to search that particular object.[6]

After a careful review of all the circumstances, we conclude that Officer Riner acted in objective good faith and that the warrant was not so lacking in indicia of probable cause as to render official belief in the existence of probable cause entirely unreasonable. Accordingly, we affirm the district court on this issue.

### III. SENTENCING

■ Appellant also contends that the sentencing court erred by failing to decrease the base offense level. He asserts that he was either a "minimal participant" or a "minor participant" and thus was entitled either to a four-level reduction under § 3B1.2(a) of the Federal Sentencing Guidelines ("minimal participant")[7] or a two-level reduction under § 3B1.2(b) ("minor participant").[8]

We review the district court's determination of an offender's role under the clearly erroneous standard. *United States v. Erves*, 880 F.2d 376, 381 (11th Cir.1989).

We conclude that the district court was not clearly erroneous in finding that Taxacher was not entitled to a reduction of his offense level.

■ Taxacher also contends that the district court erroneously placed upon him either the burden of persuasion or burden of production. Taxacher's claim of error fails on the facts of this case. Here the sentencing judge placed the burden of persuasion upon the government. Nevertheless, the sentencing court found that the evidence was insufficient to conclude that Taxacher was entitled to any reduction in the offense level.[9] Our review of the record persuades us that the sentencing judge was not in error.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

6. While we consider the unusual revocation of consent on these facts as one of the factors arousing Officer Riner's suspicions, we note that "a defendant's refusal to consent to a search cannot establish probable cause." *United States v. Alexander*, 835 F.2d 1406, 1409 n. 3 (11th Cir.1988).

7. The commentary notes state that § 3B1.2(a) is to be applied "infrequently" and only to defendants "who are plainly among the least culpable of those involved in the conduct of a group." As an example of a "minimal participant," the notes list "an individual (who) was recruited as a courier for a single smuggling transaction involving a small amount of drugs."

8. The commentary indicates that a "minor participant" is one "who is less culpable than most other participants, but whose role could not be described as minimal."

9. In *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir.1989), this court held that a defendant seeking to reduce his offense level through acceptance of responsibility has the burden of proving same. The court stated generally: "The guidelines contemplate that the government has the burden of proving the applicability of sections which would enhance the offense level and the defendant has the burden of proving the applicability of guideline sections which would reduce the offense level."