[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14362

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TYLER WESLEY SHELTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:21-cr-00017-MW-MJF-1

_____

Before JILL PRYOR, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Tyler Shelton appeals his conviction on drug and firearms possession charges. He argues that all relevant evidence should be suppressed because the affidavit supporting the first in a series of search warrants—this one for a dog sniff of his home's porch—did not establish sufficient probable cause to justify the search. But even if the affidavit was deficient, the evidence is still admissible against Shelton under the good-faith exception to the exclusionary rule. We therefore affirm the denial of the motion to suppress.

## I.

The parties dispute no facts in this appeal. Tyler Shelton was convicted of felony heroin and paraphernalia possession in 2018 and released from custody in 2019.

On November 19, 2020, officers from the Bay County Sheriff's Office presented a Bay County judge with an affidavit for a warrant authorizing a search of Shelton's residence. The warrant was signed by Investigator Williams and Sergeant Smith, who was Williams's supervisor. Later that same day the county judge signed off on the warrant, and a third officer—Investigator Cummings—took a trained drug detection dog onto Shelton's porch. The dog alerted, indicating that it smelled unlawful controlled substances inside.

Six days later officers filed for a second warrant, this one for a search inside Shelton's home.  The new affidavit reiterated the facts spelled out in the first and added in the results of the dog sniff. A different Bay County judge signed that warrant, and officers executed the search nine days later.

Investigators uncovered a lot of drugs: 59 packs of THC candies, 0.1 grams of cocaine, and 13.9 grams of methamphetamine with associated paraphernalia in the house; 234 grams of methamphetamine and 17 grams of cocaine in Shelton's car, which was in the driveway; and 0.2 grams of fentanyl on his person.  The investigators also seized Shelton's cell phone, several thousand dollars of cash located both on his person and in the house, and two pistols from the bedroom.

After hearing his *Miranda* rights, Shelton admitted to possessing the seized firearms and narcotics.  He said that he knew he could not legally possess firearms after his earlier felony convictions, and that he was a "large-scale dealer" in drugs who often made weekly contact with his supplier.  Shelton refused to cooperate in a search of his phone, and while officers later secured a (third) search warrant for its contents, the government was ultimately unable to access that information.

Shelton was indicted by a federal grand jury on felon-in-possession-of-firearms charges, as well as possession with intent to distribute methamphetamine and cocaine.  He then filed a motion to suppress, arguing that (1) the affidavit in support of the first search warrant (for the sniff) was insufficient to establish probable

cause, (2) the good-faith exception to the probable cause requirement did not apply, and therefore (3) evidence seized from the subsequent warrants was inadmissible as fruit of the poisonous tree. The motion to suppress identified five distinct (and allegedly inadequate) bases of factual support laid out in the affidavit for the dog sniff warrant:

> (1) "information" obtained from multiple "confidenti[a]l sources" in November that Shelton and another resident "frequently utilize" the residence to "sell illicit substances" and to engage in "narcotics trafficking";

> (2) a report from a confidential informant that Shelton distributed "narcotics" to individuals who then sold "the product";

> (3) the same informant's statement that they "recently bought narcotics" from Shelton;

> (4) the officers' search of Shelton's criminal history, which uncovered "several criminal charges of possession of a controlled substance"; and

> (5) "surveillance" by law enforcement in the last 10 days that observed "short stays" by individuals approaching the home in vehicles and on foot which, given the officers' "training and experience," were "consistent with narcotics distribution." Investigator Williams noted that he had "investigated multiple narcotic related crimes" and completed "numerous hours of narcotics training."

Prosecutors argued that the above bases—and the fact that the warrant was signed by the affiant's supervisor—gave rise to

probable cause, or at least provided enough factual support to trigger the good-faith exception. The district judge ruled that while the facts in the affidavit "may not be enough to support probable cause," under "the totality of the circumstances" they were sufficient to trigger the good-faith exception. Shelton then pleaded guilty while preserving his right to appeal the denial of his motion to suppress.

## II.

When evaluating a district court's ruling on a motion to suppress, we review factual findings for clear error and application of the law to these facts de novo. *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999). We must construe all facts in the light most favorable to the party that prevailed below. *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000).

## III.
### A.

The exclusionary rule prohibits the use of evidence seized during, or as a result of, an unlawful search—for example, one unsupported by a proper warrant and not otherwise falling into an exception to the Fourth Amendment's warrant requirement. *Murray v. United States*, 487 U.S. 533, 536–37, 540 (1988).

In *United States v. Leon*, the Supreme Court recognized a "good-faith exception" to the exclusionary rule when evidence was "obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately

found to be unsupported by probable cause." 468 U.S. 897, 900, 924 (1984). We agree with the district court that *Leon*'s good-faith exception is the proper place to situate our analysis.[1] If that exception applies, it is dispositive.

As a legal issue, we review applications of *Leon*'s exception to the exclusionary rule de novo. *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002). But the Supreme Court has identified four situations where this good-faith exception cannot apply, one of which is when an affidavit supporting a warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quotation omitted). Shelton argues that this case is an example of that situation.[2]

But suppression in this situation is rarely appropriate, and is generally limited to incidents where officers "were dishonest or

---

[1] We decline to consider whether our line of arguable-probable-cause cases should be extended into this new context, as the government invites us to do. Similarly, both parties make dubious claims about what it takes to establish probable cause for a warrant supporting a dog sniff under *Florida v. Jardines*, 569 U.S. 1 (2013). The district court rejected Shelton's assertion that *Jardines* rendered such searches per se unreasonable, and the government's argument that the probable cause required for a dog sniff warrant is lessened because *Jardines* specifies "a relatively new procedure." As we agree with the district court that deciding this case using the good-faith exception is appropriate, we need not address these claims.

[2] Shelton does not argue that any of the other situations might apply, and we likewise see no record evidence supporting any of them. *See Martin*, 297 F.3d at 1313 (citing *Leon*, 468 U.S. at 923) (listing the other situations).

reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Martin*, 297 F.3d at 1313 (quotation omitted). Specifically, we suppress if given the totality of the circumstances, a reasonably well-trained officer would not have relied on the warrant. *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990). In determining whether an affidavit lacks indicia of probable cause, we look only at the face of the affidavit. *United States v. Robinson*, 336 F.3d 1293, 1296 (11th Cir. 2003).

## B.

Four mutually reinforcing reasons show that the affidavit— and thus the warrant—should be upheld. *First,* the affidavit discusses Shelton's previous criminal history. He argues that the affidavit is deficient because it cites to "charges" involving controlled substances, and that only convictions can demonstrate probable cause.[3] But he cites no precedent for that point—not in his motion to dismiss, not in the suppression hearing, and not in his briefs on appeal. We conclude that officers may have considered recent charges against Shelton to be indicia of probable cause. *Illinois v. Gates,* 462 U.S. 213, 267 (1983) (noting "searches pursuant to a warrant will rarely require any deep inquiry into

---

[3] Shelton was previously imprisoned for heroin and paraphernalia possession, but that fact went unmentioned in the affidavit or the sentencing hearing. Because only the face of the affidavit can be considered, we do not discuss the impact of these prior convictions in our analysis. *See Robinson*, 336 F.3d at 1296.

8                       Opinion of the Court                  21-14362

reasonableness"); *see United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993) (upholding an affidavit based on prior arrests and a single confidential informant as properly establishing probable cause).

   *Second,* officers observed Shelton's home within the ten days before the search and saw visits to the house which, according to Investigator Williams's "training and experience," were "consistent with narcotics distribution." Shelton does not dispute the training or experience of the officers, or suggest that their observation was stale. Instead, he claims that a lack of specificity about the observations is fatal, particularly as the affidavit stated that "based on positioning and time of day no actions could be taken to further the investigation."[4] But as we pointed out in *Martin*, the relevant inquiry is not if it is "clear that the facts contained in the affidavit leave much to be desired." 297 F.3d at 1315. Instead, it is whether, despite an affidavit's "deficiencies as to the specific dates and times and exact links to" a defendant, it would have been "*entirely unreasonable*" for an officer to "believe that what he wrote in the affidavit would be sufficient to support a finding of probable cause." *Id.* It would not be *entirely* unreasonable for officers to believe that activities they saw as

---

[4] Shelton argues that this line in the affidavit means the search took place at night and without a good view of the residence. There is no reason that must be true—officers likely could not approach a house without being seen in broad daylight. Regardless, we must construe the facts in favor of the government. *See Bervaldi*, 226 F.3d at 1262.

evidence of narcotics distribution owing to their training and experience were also indica of probable cause.

*Third*, a confidential informant and multiple confidential sources provided interlocking information connecting Shelton to recent drug sales, at least some of which took place at the property. Shelton cites *Martin* for the proposition that if "an informant is mentioned in the affidavit, the affidavit must also demonstrate the informant's veracity and basis of knowledge." *Id.* at 1314 (quotation omitted). True. But Shelton omits *Martin*'s very next sentence: "However, when there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *Id.* (quotation and brackets omitted).

Just so here. The affidavit does not rely only on statements from a single confidential informant—it cross-references those statements with other confidential reports, personal observations by law enforcement, and discussion of the relevant portions of Shelton's criminal history. And as Shelton's counsel conceded at the suppression hearing, there is no hard-and-fast rule about what it takes for a court to determine how much information is sufficient to corroborate a confidential informant's statements. *See Gates,* 462 U.S. at 229–30, 229 n.4 (replacing an "elaborate set of legal rules" regarding an informant's "basis of knowledge" and "veracity" with a "commonsense, practical" inquiry).

*Finally,* multiple officers were involved and concluded that probable cause existed. The affidavit was drafted by one officer

(Investigator Williams), signed by two (Williams and his supervisor, Sergeant Smith), and executed by a third (Investigator Cummings). As the Supreme Court has noted, "the fact that officers sought and obtained approval of the warrant application from a superior and a deputy district attorney before submitting it to the Magistrate provides further support for the conclusion that an officer could reasonably have believed that the scope of the warrant was supported by probable cause." *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012).

Shelton argues that this statement was dicta and surplusage given the other indicia of probable cause that the *Messerschmidt* Court identified. But he misunderstands the nature of the inquiry. We are to weigh the totality of the circumstances—all the circumstances—to determine whether there were enough indicia of probable cause for an objectively reasonable officer to conclude it existed. *Taxacher*, 902 F.2d at 872. That multiple officers each believed there was enough probable cause for them to swear to the statement is surely relevant evidence, just as it was for the Supreme Court in *Messerschmidt.*

As the district judge noted, the proper inquiry is whether the affidavit is so devoid of *any* support for probable cause that the good-faith exception would not apply. Searches "conducted pursuant to warrants will rarely require suppression." *Taxacher*, 902 F.2d at 871. And even "negligent law enforcement conduct," without more, "does not justify exclusion." *United States v. Nicholson*, 24 F.4th 1341, 1353 (11th Cir. 2022), *cert. denied*, 142 S.

21-14362                Opinion of the Court                11

Ct. 2795 (2022) (citing *Herring v. United States*, 555 U.S. 135, 144 (2009). The "threshold for establishing" that an inadequate affidavit should defeat *Leon*'s good-faith exception "is a high one, and it should be." *Messerschmidt*, 565 U.S. at 547.

We agree. Whether or not probable cause existed, this warrant (though inartfully drafted) presents enough indicia of probable cause for an objectively reasonable officer to rely on it in good faith. *See Leon*, 468 U.S. at 923 n.23.

The district judge was right to deny Shelton's motion to suppress, because the *Leon* exception to the exclusionary rule applies. As a result, officers were free to rely on the dog sniff in their second affidavit without implicating any fruit-of-the-poisonous-tree concerns.

⋆    ⋆    ⋆

We **AFFIRM** the district court's order denying Shelton's motion to suppress.