[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 21-13092

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KEVIN MCCALL,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cr-60100-KMW-1

————————————

Before ROSENBAUM, BRANCH, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

This appeal requires us to decide how the exclusionary rule's good faith exception applies to the search of a cloud storage account. While losing in a high-stakes poker game, Kevin McCall allegedly used his cell phone to arrange an armed robbery to reclaim his losses. Because a cell phone was directly tied to the crime, no one disputes that there was probable cause to search that device. But the police went one step further. They secured a warrant to search an iCloud account that backed up the phone twelve hours before the poker game and robbery. The iCloud warrant permitted a search of almost all the account's data with no time limitation. Based on evidence secured by that warrant, the government prosecuted and a jury convicted McCall of being a felon in possession of a firearm.

Given the warrant's breadth and the account's indirect link to the crime, McCall argues that the district court should have suppressed the iCloud evidence for three reasons. First, he argues that the warrant affidavit was so lacking in indicia of probable cause that no reasonable officer would believe that he had probable cause to search the iCloud account. Second, he argues that the warrant was so facially deficient in its particularity that the executing officers could not have reasonably presumed it to be valid. And third, as a catchall, he argues that the warrant and its supporting affidavit were so defective that the executing officer's reliance on the warrant was objectively unreasonable.

Although Fourth Amendment standards are largely settled, their application to developing areas of technology is not. Like judges, law enforcement officers operating in good faith may struggle to apply existing standards to new circumstances. That is where the exclusionary rule's good faith exception comes in. The government concedes that the iCloud warrant fell short in certain respects, but it argues that reasonable officers could have believed it to be valid. We agree that the warrant was not so deficient in probable cause, particularity, or otherwise that it would be unreasonable for an officer to rely on it in good faith. Accordingly, we affirm.

## I.

### A.

Around midnight on April 11, 2020, McCall was playing poker with four other men at a private residence. As the poker game progressed, McCall began losing large sums of money. Becoming increasingly frustrated with his losses, he "made threats to do something about it." The group saw McCall "frantically using his cell phone to make calls/texts to unknown persons," and he eventually "received a phone call and stepped outside," explaining that "he needed to take care of something."

Soon after, there was a knock at the door. One of the poker players saw McCall standing outside. But, when he opened the door for McCall, two masked men wielding a rifle and a handgun stormed inside. They ordered everyone to the ground and grabbed

the cell phones and cash on the poker table. The masked men shot two of the poker players and escaped with the cash and cell phones.

Three days later, McCall was arrested on two counts of attempted felony murder and four counts of armed robbery. Detective Keith Rosen applied for a warrant to search McCall's iPhone. In his supporting affidavit, the detective stated that, based on the sworn statements of all the victims involved, he "had probable cause to believe that McCall's listed cell phone . . . was used to contact the unidentified (masked) armed black male suspects and facilitate the offenses listed above." He believed that a search of the cell phone would help him "identify" the unknown gunmen. Although a judge issued the cell phone warrant, it proved largely useless because the locked cell phone required a passcode that the detective did not have. Still, the detective did manage to extract the name of the iCloud account associated with the phone and the date and time of the last data backup.

Based on that information, he applied for a warrant to search McCall's iCloud account. Along with the information provided in the cell phone affidavit, the iCloud affidavit explained that the detective "knows from law enforcement training and experience" that Apple provides a backup record of an iCloud user's data. He acknowledged that the most recent backup of McCall's cell phone occurred about twelve hours before the poker game. But he explained that he "knows from law enforcement training and experience that criminal activity is often planned prior to the act and the aforementioned data from the iCloud account may reveal relevant

witnesses and/or coconspirators to the offenses listed above, as well as photos of items used in the incident (clothing, guns, cars)." For example, internet searches could show the "planning or executing" of the offenses, journal entries could confirm McCall's "intent, involvement or motive," and notes could store the cell phone's passcode.

A judge issued the warrant and ordered a two-step process for conducting the search. First, acknowledging that Apple had "no reasonable means to distinguish evidence of the crimes from any other records contained within the sought-after account," the warrant ordered Apple to "provide the entirety of the [account] records" to law enforcement. Second, the warrant required that officers receiving the data sort through it for evidence of the specified crimes. The warrant authorized officers to search seven broad categories of data, essentially encompassing the entirety of McCall's iCloud account: the device's registration information, its iCloud data (including all email content, photos, documents, contacts, and calendars), Find My iPhone data, communications records, iCloud backup history, Facetime communication logs, and iTunes account information.

Apple emailed the detective the iCloud backup data, which spanned about two-and-a-half months leading up to the robbery. Supervisor of the Digital Forensics Unit James KempVanEe then processed the data, discovering photographs and videos of McCall, a felon, holding a 9-millimeter semi-automatic pistol. The photographs dated back to the month before the robbery. He flagged the

images for the detective, who then referred the case to federal officers.

## B.

Based on the images recovered from the iCloud account, McCall was charged with being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the evidence seized from his iCloud account.

During the suppression hearing, Detective Rosen explained his process for preparing the iCloud warrant application. He had never prepared an application to search a cell phone or cloud account. So he modified a standard form application for that purpose. Before submitting the application to the judge, he asked his supervisor and an assistant state attorney to review the document. He also consulted two other detectives and a forensics supervisor.

The detective testified that he hoped to uncover two kinds of evidence by searching the iCloud account. First, he thought a search could reveal the identities of the gunmen that McCall apparently summoned with his cell phone during the poker game. Based on the recovered shell casings, he determined that the gunmen used 9-millimeter and .40-caliber guns, which he also hoped to identify in photographs. He acknowledged that, because the most recent iCloud backup occurred twelve hours before the incident, the data covered by the warrant could not possibly include any calls or text messages McCall sent or received during the poker game. But he explained that, in his experience, crimes are often planned in advance using cell phones. There was thus a "distinct possibility"

that McCall had communicated with the gunmen before that evening. Second, the detective explained that people often store iPhone passcodes in their notes or photographs. So he believed the iCloud search could reveal information allowing officers to unlock the cell phone.

Forensics supervisor KempVanEe also testified at the suppression hearing, describing how he is able to filter electronic data in certain ways, such as limiting the production of data to communications, messages, and phone calls. He could also "possibly" reduce the production of communications to only "a certain time period." Compared to most iCloud searches, the supervisor stated there was comparatively little communications and photographic data in McCall's iCloud account. He explained that the warrant at issue looked much like the fifty or so iCloud warrants he had processed before and that he had "[no] reason to believe there was not probable cause for the execution of the warrant." He explained that, although he seeks to educate officers on proper electronic search protocols, "technology is constantly changing."

The district court denied McCall's motion to suppress. The court concluded that the iCloud warrant was invalid because, even though it was supported by probable cause, it lacked sufficient particularity. Still, the court explained that "this is clearly an evolving area of the law," and determined that the good faith exception to the exclusionary rule applied. McCall conditionally pleaded guilty

and was sentenced to 27 months' imprisonment. His plea agreement preserved his right to appeal the suppression decision, and he timely filed a notice of appeal.

## II.

A district court's denial of a suppression motion raises a "mixed question of law and fact." *United States v. Blake*, 868 F.3d 960, 973 (11th Cir. 2017) (quotation omitted). "We review de novo whether the good faith exception applies," but we review "the underlying facts upon which that determination is based" for clear error. *United States v. Morales*, 987 F.3d 966, 974 (11th Cir.), *cert. denied*, 142 S. Ct. 500 (2021) (quotation omitted).

## III.

The Fourth Amendment to the United States Constitution requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. It is silent, however, on the proper remedy when its probable cause or particularity requirements are violated. *Morales*, 987 F.3d at 972. In part to provide a remedy, the Supreme Court created the exclusionary rule, which generally prohibits the government from relying on evidence obtained in violation of the Fourth Amendment. *See United States v. Leon*, 468 U.S. 897 (1984).

In practice, however, the exclusionary rule applies in only "unusual cases." *Id.* at 918. This remedy "exacts a heavy toll on both the judicial system and society at large" because "[i]t almost

always requires courts to ignore reliable, trustworthy evidence." *Davis v. United States*, 564 U.S. 229, 231, 237 (2011). It is therefore limited to situations in which the threat of its application can deter future violations. *Herring v. United States*, 555 U.S. 135, 139–41 (2009). Because good-faith mistakes cannot be deterred, the exclusionary rule applies only if "the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *Davis*, 564 U.S. at 238. In "doubtful or marginal cases," suppression is inappropriate. *United States v. Ventresca*, 380 U.S. 102, 109 (1965).

Consistent with the rule's objective of future deterrence, the Supreme Court carved out a "good faith exception" to the exclusionary rule. *Leon*, 468 U.S. at 908. "[W]e have observed that although good faith is most often framed as an exception to the exclusionary rule, it is probably more accurately described as a reason for declining to *invoke* the exclusionary rule in the first place." *United States v. Campbell*, 26 F.4th 860, 870 n.5 (11th Cir.) (en banc), *cert. denied* 143 S. Ct. 95 (2022) (quotation omitted). "[W]hen law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system." *Leon*, 468 U.S. at 908.

This "exception" has special relevance when officers act pursuant to a warrant. "In the ordinary case, an officer cannot be expected to question" a judge's decision that the requirements for a warrant have been satisfied or that the form of the warrant is suffi-

cient. *Id.* at 921. Therefore, suppressing evidence discovered pursuant to a warrant generally "cannot logically contribute to . . . deterrence." *Id.*

Nonetheless, there are circumstances when the good faith exception will not apply. Even if an officer relies on a warrant in subjective good faith, an officer's reliance must be *objectively* reasonable. *Morales*, 987 F.3d at 974 (quoting *United States v. Martin*, 297 F.3d 1308, 1318 (11th Cir. 2002)). The good faith exception cannot save a search if the warrant was "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)). It likewise does not apply when a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.*

McCall does not contest that the officers relied on the warrant in subjective good faith—he does not argue, for example, that anyone lied to get the warrant. Instead, he argues that the officers' reliance on the warrant was not objectively reasonable in three ways. First, he contends that the iCloud affidavit was so lacking in indicia of probable cause that official belief in its existence was unreasonable. Specifically, McCall argues that because there was no sign that evidence of the robbery would be on the account, and the data was last backed up hours before the crime, it was unreasonable for Detective Rosen to believe the affidavit established probable

cause to search the account. Second, he argues that the warrant was so facially deficient in its particularity that the executing officers could not have reasonably presumed it to be valid. Because the warrant requested all data, unbound by subject matter or date, McCall argues that no reasonable officer would believe the warrant was sufficiently particular. Third, as a catchall, he argues that the circumstances of the warrant and search establish that a well-trained officer would have known the search was unconstitutional despite the judge's approval.

Before diving into McCall's arguments, it's worth noting at the outset that technology moves quickly, the law moves slowly, and the combination can leave law enforcement officers with little insight on how to investigate a cloud account. We will assume without deciding that law enforcement must secure a warrant before searching an iCloud account that is held by a third party. *See Carpenter v. United States*, 138 S. Ct. 2206 (2018). Even so, when asked to review searches for cloud data, courts have approached issues of probable cause and particularity in different ways. *See* Jonathan Mayer, *Government Hacking*, 127 Yale L. J. 570, 620–21 (2018). Because courts struggle to decide how probable cause and particularity apply to the information that law enforcement collects from a cloud account, it is unsurprising that police officers might struggle as well. It is against this backdrop that we consider McCall's position that the officers were not justified in relying on this warrant to search the iCloud account.

*A.*

We will start with McCall's argument that the warrant was based on an affidavit that so obviously lacked probable cause that the officers could not have reasonably relied on it. Probable cause requires "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). It is not a mathematical standard—it is a "practical, non-technical conception" based on "the factual and practical consider-ations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 231 (quotations omitted). Courts give a "commonsense" rather than "hypertechnical" reading to search warrant applications when reviewing probable cause. *Id.* at 236. And we "give great deference to a lower court's determination of probable cause." *United States v. Carroll*, 886 F.3d 1347, 1351 (11th Cir. 2018) (quoting *United States v. Bradley*, 644 F.3d 1213, 1263 (11th Cir. 2011)).

The parties dispute whether there was actual probable cause to search McCall's iCloud account. McCall contends the affidavit lacked any indication that officers would find evidence of the rob-bery on the iCloud account. Accordingly, the affidavit failed to link the iCloud account to the crime under investigation. The govern-ment responds that it was reasonable to believe the iCloud account would contain evidence of the robbery. Because conversations and images on the iCloud account could identify the gunmen, the gov-ernment argues that a search of the account would likely provide leads to law enforcement.

We need not decide whether the iCloud warrant violated the Fourth Amendment. Even if it did, the good faith exception applies to close calls and threshold cases. *Messerschmidt v. Millender*, 565 U.S. 535, 556 (2012). We will therefore assume, without deciding, that the detective lacked probable cause to search McCall's iCloud account. The question before us now is whether the defects in the affidavit were so obvious that the good faith exception should not apply. That is, McCall must establish that the iCloud warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Leon*, 468 U.S. at 923 (quotation omitted).

We look only to the face of the affidavit to determine whether it lacked sufficient indicia of probable cause. *United States v. Robinson*, 336 F.3d 1293, 1296 (11th Cir. 2003). To exclude evidence on this ground, the affidavit must be so clearly insufficient "that it provided 'no hint' as to why police believed they would find incriminating evidence." *Morales*, 987 F.3d at 976. There is a "sound presumption that the [judge] is more qualified than the police officer to make a probable cause determination." *Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986) (quotations omitted). Accordingly, the officer's judgment must be more than just "mistaken"—it must be so "plainly incompetent," *Messerschmidt*, 565 U.S. at 553, that "no officer of reasonable competence would have requested the warrant," *Malley*, 475 U.S. at 346 n.9.

We cannot say McCall has met this standard. The affidavit supporting the iCloud warrant provides an obvious link between

McCall's cell phone and the crime. The affidavit explains that the four victims gave sworn statements to law enforcement that McCall became increasingly angry and threatened to "do something" about his mounting losses. The victims told law enforcement that, after making that threat, McCall "frantically" used his cell phone to communicate with some "unknown persons" until he eventually "stepped outside" to "take care of something." After McCall knocked on the door, masked gunmen rushed into the residence, shot two poker players, and stole cash and phones. The affidavit therefore supplies sufficient indicia of probable cause that McCall used his cell phone to arrange the robbery and that the phone contained information that would identify the gunmen.

Given the established link between the cell phone and the crime, the affidavit also ties the cell phone's associated iCloud account to the crime. The affidavit explains that although the cell phone's passcode thwarted a full search, law enforcement found an iCloud storage account associated with the device. The affidavit told the judge that Apple's default iCloud service automatically backs up data from Apple devices, including messages and images on a cell phone. It disclosed that the last data backup occurred twelve hours before the poker game. But the affidavit relied on the detective's "law enforcement training and experience that criminal activity is often planned prior to the act."

McCall argues that the link between the iCloud account and crime is obviously too attenuated because the iCloud account was backed up twelve hours before the crime occurred. We disagree. If

there is probable cause to believe that McCall summoned the gunmen to the scene to commit a robbery, then there is probable cause to believe that he had a preexisting relationship with them. It is not unreasonable to believe that such a relationship would be reflected in the data stored in his iCloud account. "Cell phones have become important tools in facilitating coordination and communication among members of criminal enterprises, and can provide valuable incriminating information about dangerous criminals." *Riley v. California*, 573 U.S. 373, 401 (2014). Despite the twelve-hour delay, the affidavit provides reason to suspect that the communications data in McCall's iCloud account would help reveal the gunmen's identities.

McCall also argues that, even if the affidavit provided sufficient indicia of probable cause to search his iCloud data for communications, there were not similarly sufficient indicia of probable cause to search other categories of data as well. But, if McCall had a preexisting relationship with the gunmen, law enforcement had good reason to search for more than just communications. Photographs or videos could contain images of the men or the items used in the crime, such as the firearms or masks. And the affidavit explained that, based on the investigator's experience, the iCloud account could also have information about the phone's password. Moreover, "[c]ommunications stored in the cloud can take a wide variety of forms, including text messages, email, photos, videos, files, browsing history, phone backups, and more." Ian Walsh, *Revising Reasonableness in the Cloud*, 96 Wash. L. Rev. 343, 367–68 (2021). For example, people take screenshots of text messages or

use applications to send and save photographs with communicative text captions typed over an image. So, if law enforcement officers have a good reason to search for communications, they may be justified in reviewing more than just emails and text messages.

Finally, we have identified probable cause for an electronic search in similar circumstances. In *United States v. Blake*, officers identified an email address posting ads for prostitution services and located the email's associated Facebook account. 868 F.3d at 966. Because the Facebook page listed the defendant's occupation as "Boss Lady at Tricks R Us," officers obtained search warrants to search "virtually every type of data that could be located in a Facebook account." *Id.* (alteration adopted). We approved the search. We reasoned that the listed occupation "Boss Lady" linked the defendant's account to the criminal conspiracy, giving investigators "probable cause to believe that evidence of her participation would be found in her Facebook account." *Id.* at 973.

The affidavit linking McCall's cell phone to his cloud account is like the link investigators made in *Blake*. As in *Blake*, the investigators here had a logical process when connecting the alleged crime to the searchable data. That is, they had probable cause to believe that McCall used his phone to organize the crime, and his iCloud account backed up that phone's data. We recognize that there are factual differences between the two cases—in *Blake*, there was an ongoing conspiracy, whereas the robbery appeared to be a one-off event. But the connection between McCall's iCloud account and the cell phone used to facilitate the robbery is at least as

strong as the link between the *Blake* defendant's Facebook account and the prostitution conspiracy. *Id.* At the very least, the similarities between these two cases are enough to conclude that any defects in probable cause were not obvious enough to negate the good faith exception.

We cannot say that the absence of probable cause in the iCloud affidavit—assuming there was such an absence—is so obvious that an officer could not reasonably rely on the warrant.

*B.*

We turn now to whether the warrant identified the items to be searched and seized with sufficient particularity. The Fourth Amendment requires a warrant to "particularly" describe "the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment's particularity requirement sought to remedy the evils of the "general warrant," which permitted officers' exploratory rummaging in colonial America. *Blake*, 868 F.3d at 973; *see also Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) (explaining that particularity does not guard against "intrusion per se," but against "a general, exploratory rummaging in a person's belongings"). Still, the requirement must "be applied with a practical margin of flexibility, depending on the type of property to be seized," and the property description need only be "as specific as the circumstances and nature of activity under investigation permit." *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982). A warrant does not have to be elaborate. *Carroll*, 886

F.3d at 1351. Rather, it need only be as narrow as reasonably expected "given the state of the [investigator's] knowledge . . . and the nature and extent of criminal activities under investigation." *Wuagneux*, 683 F.2d at 1350.

Although it isn't clear how an iCloud warrant should identify the target of the search with particularity, *see, e.g.,* Walsh, *Revising Reasonableness*, 96 Wash. L. Rev. at 358, there are generally two types of limitations that can particularize such a warrant. The first is narrowing the search based on the subject matter of the data. For example, a warrant may limit investigators' search of communications data to only communications with known or suspected co-conspirators. *See Blake*, 868 F.3d at 974. The second is a temporal limitation. Officers can narrow their search by requesting data only for the time when an individual is suspected of planning or participating in criminal activity. *Id.*

Of course, a subject-based limitation may not mean a category-based limitation. For example, a warrant limiting a search to communications between a suspect and his coconspirator—a subject-based limitation—does not require that the only categories of searchable data be instant messages or emails. As we've already said, communications between individuals may be stored in various data formats, including voice memos, shared notes folders, or screenshots of prior conversations in an images folder. Criminals may even change file extensions or otherwise hide files in a format different from their native format. *See* Aaron J. Gold, *Obscured by Clouds: The Fourth Amendment and Searching Cloud Storage Accounts*

*Through Locally Installed Software*, 56 Wm. & Mary L. Rev. 2321, 2328–29 (2015) (explaining that limiting searches to only certain file types "might not be feasible given the realities of digital storage").

Because the same content can be stored in so many different formats, a subject-based limitation may sometimes be so broad as to be meaningless. As a practical matter, "it will often be impossible to . . . separate relevant files or documents before the search takes place, because officers cannot readily anticipate how a suspect will store information related to the charged crimes." *United States v. Ulbricht*, 858 F.3d 71, 102 (2d Cir. 2017). The warrant here is a good example. The warrant authorized a search of seven categories of data: the phone's registration information, its iCloud data (including all email content, photos, documents, contacts, and calendars), Find My iPhone data, communications records, iCloud backup history, Facetime communication logs, and iTunes account information. But those categories are so broad as to allow investigators to review practically all conceivable content on the cloud account. Thus, despite a putative limitation, the warrant required Apple to turn over the entirety of the account's information.

Given these considerations, we think the preferred method of limiting the scope of a search warrant for a cloud account will usually be time-based. By narrowing a search to the data created or uploaded during a relevant time connected to the crime being investigated, officers can particularize their searches to avoid general rummaging. Cloud or data-based warrants with a sufficiently tailored time-based limitation can undermine any claim that they are

the "internet-era version of a 'general warrant.'" *Blake*, 868 F.3d at 974. And because data is often created or uploaded at an ascertainable date and time, it will usually be possible to segregate that data before conducting a search. Of course, the circumstances of an investigation may not require any subject- or time-limitation on a cloud warrant or may require that a sufficiently particular warrant include a subject-matter limitation. But in the mine run of cases, we think a time-based limitation will be both practical and protective of privacy interests.

The government concedes that the warrant here fell short of the particularity requirement because it allowed a search of all the conceivable data on the account without any meaningful limitation. Accordingly, we will assume the warrant was overbroad. The issue we must decide then "is whether the good faith exception applies in this case to excuse the unconstitutional over broad warrant." *United States v. Travers*, 233 F.3d 1327, 1330 (11th Cir. 2000).

McCall argues that the warrant was "so facially deficient" in particularizing the places to be searched or things to be seized that the detective could not have "reasonably presume[d] it to be valid." *Leon*, 468 U.S. at 923. We disagree. Even though there was no facial time limit, McCall's iCloud account stored data for only a two-and-a-half-month period at the time of the search. Any temporal limitation that satisfied the particularity requirement likely would have covered that amount of time. The warrant likewise specified seven categories of data that officers were allowed to search, which was

tailored to the specific crime under investigation. Of course, those categories encompassed most of the account's conceivable data. But we do not suppress evidence on overbreadth grounds if the warrant "adequately conveys its parameters." *United States v. Delgado*, 981 F.3d 889, 899 (11th Cir. 2020). The detective reasonably could have believed that the seven categories of iCloud information fell within the practical margin of flexibility for his broad investigative task, especially given the close connection between the cell phone used to commit the crime and the cloud account. *See Wuagneux*, 683 F.2d at 1349.

Given the nature of the search, the connection between the crime and the cloud account, and the likelihood of a preexisting relationship between McCall and the gunmen, investigators reasonably presumed that the warrant was valid. *See Leon*, 468 U.S. at 923. Even if the warrant violated the particularity requirement, it was not so "facially deficient" that the officers could not have reasonably relied on it when executing their iCloud search.

## C.

Having rejected McCall's arguments about probable cause and particularity on the face of the affidavit and warrant, we turn to McCall's argument that the detective's reliance on the warrant was objectively unreasonable because of the surrounding circumstances. *Morales*, 987 F.3d at 976.

We have held that "[i]n all but the most unusual circumstances, it is objectively reasonable for a law enforcement officer to rely on a court order." *United States v. Stowers*, 32 F.4th 1054, 1067

(11th Cir. 2022); *see also Robinson*, 336 F.3d at 1295. After all, in most cases, officers "cannot be expected to question" a court's "judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 921. Nonetheless, if the circumstances of the warrant establish that "a reasonably well-trained officer would know that the warrant was illegal despite the [judge's] authorization," we must conclude that the detective acted unreasonably. *Martin*, 297 F.3d at 1318. In answering this question, we may review "the entire record," including information that was not before the magistrate or judge. *Morales*, 987 F.3d at 976.

Applying this standard to the facts here, we cannot say the detective's reliance on the iCloud warrant was objectively unreasonable. Before acting on the warrant, he received approval from several other individuals, including lawyers, that it passed factual and constitutional muster. *See Messerschmidt*, 565 U.S. at 554 ("[T]hat the officer[] sought and obtained approval of the warrant application from a superior and a deputy district attorney before submitting it to the Magistrate provides further support for the conclusion that an officer could reasonably have believed that the scope of the warrant was supported by probable cause."). The detective's additional steps "are indicative of objective good faith." *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990). And there was no reason to think that the judge's approval of the warrant was unusual or suspect. The supervisor of the digital forensics unit testified that the iCloud warrant looked like many other cloud warrants he had reviewed throughout his career, leading him to believe there was no reason to think it was invalid. *Cf. Stowers*, 32

F.4th at 1068–69 (reliance was reasonable in part because language in a challenged wiretap order was standard, giving no cause to believe it was wrong). Additionally, the iCloud warrant derived from the cell phone warrant, which indisputably satisfied Fourth Amendment standards. Even assuming probable cause or particularity was lacking, the error was not so obvious that any reasonably well-trained officer would question the validity of the warrant.

## IV.

The district court is **AFFIRMED**.

21-13092　　　　　Rosenbaum, J., Concurring　　　　　1

Rosenbaum, Circuit Judge, Concurring:

I concur in nearly all of the well-reasoned panel opinion. I write separately to comment on the panel opinion's conclusion that "in the mine run of cases, . . . a time-based limitation will be both practical and protective of privacy interests." Maj. Op. at 20. I appreciate the panel opinion's effort to identify a general rule. But though general rules are helpful when they're possible, I just don't think the issue here is that simple.

The Warrants Clause of the Fourth Amendment ensures, among other things, that "no Warrants shall issue, but [those] . . . particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Supreme Court has noted that the "manifest purpose of this particularity requirement was to prevent general searches." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) (identifying the "specific evil" against which the Fourth Amendment's particularity requirement guards as "the 'general warrant' abhorred by the colonists," which permitted "a general, exploratory rummaging in a person's belongings"). As the Court has explained, the Framers wanted to ensure that "wide-ranging exploratory searches" did not occur. *Garrison*, 480 U.S. at 84. In furtherance of that objective, the particularity requirement "prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196 (1927).

Given the purposes of the Fourth Amendment's particularity requirement, it's not surprising that we've said that a warrant's

description of the things to be searched and seized "is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982). Still, though, we apply the particularity requirement "with a practical margin of flexibility, depending on the type of property to be seized." *Id.* at 1349.

So "a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." *Id.* And right there, we have the guiding principle for assessing whether a warrant contains a sufficiently particularized description of the things to be searched and seized.

To be sure, cloud searches, like other electronic searches, present particularity challenges unique to the digital realm. But at the very least, particularity's guiding principle requires a warrant to be as specific as possible when it comes to identifying the things to be searched. And we can't accomplish that if we artificially determine beforehand that a single criterion—say, the inclusion of a time period in a warrant—means the warrant satisfies the particularity requirement. Of course, often, including a time period will be necessary.

But including a time period doesn't relieve a warrant from otherwise having to particularly describe the things to be searched and seized to the extent possible. When it comes to electronic data, a warrant should also describe the categories of evidence it seeks—for instance, photographs, communications, and records (if applicable). And it should identify what subject matter those categories

21-13092                ROSENBAUM, J., Concurring                        3

of evidence must pertain to. A warrant should also specify any other characteristics of the particular evidence sought that are possible to identify and describe. In short, if we apply the guiding principle, it will be a rare circumstance when specifying only a timeframe will suffice.